**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LONNIE LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. 1:21-cv-00786-ELR |
| STATE FARM FLORIDA | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DEFENDANT STATE FARM FLORIDA INSURANCE COMPANY'S</u>**
**<u>INITIAL DISCLOSURES</u>**

COMES NOW Defendant State Farm Florida Insurance Company ("State Farm") and submits its Initial Disclosures as required by FED. R. CIV. P. 26 and LR 26.1, stating as follows:

**(1)    If the defendant is improperly identified, state defendant's correct identification and state whether defendant will accept service of an amended summons and complaint reflecting the information furnished in this disclosure response.**

State Farm is properly identified.

**(2)    Provide the names of any parties whom defendant contends are necessary parties to this action, but who have not been named by plaintiff.  If defendant contends that there is a question of misjoinder of parties, provide the reasons for defendant's contention.**

None.

**(3)    Provide a detailed factual basis for the defense or defenses and any counterclaims or crossclaims asserted by defendant in the responsive pleading.**

State Farm has not raised any counterclaims or crossclaims in its Answer and Affirmative Defenses.

State Farm's affirmative defenses are largely based on the following facts: Plaintiff Lonnie Love ("Plaintiff") made a claim for insurance benefits related to the reported theft of jewelry insured by State Farm personal articles policy number 59-CK-S034-0 ("Policy").   State Farm issued the Policy to Plaintiff on June 15, 2020, which provided coverage to certain scheduled jewelry items, a watch and diamond ring, subject to the Policy's terms and conditions and applicable law.  On August 10, 2020, the Policy was amended to add a diamond band, bringing the total value of the scheduled jewelry to $137,200.00.  The policy period for the amended Policy is August 10, 2020 to June 15, 2021.

On September 18, 2020, Plaintiff reported that his vehicle was stolen with the insured jewelry in it while Plaintiff was retrieving his vehicle from the valet at The Cheetah nightclub ("The Cheetah"), located at 887 Spring Street, Atlanta, Georgia, on September 6, 2020.  Plaintiff reported that when he exited the vehicle to avoid a shooting, an individual jumped into his car and drove away.  All three

scheduled jewelry items were inside a Louis Vuitton "pouch" bag inside the vehicle when it was stolen.  The Loss was assigned 59-11P3-20M ("Claim").

On September 21, 2020, State Farm received a letter of representation from Plaintiff's attorney.

On September 24, 2020, State Farm requested from Plaintiff the police report for the incident, the names of witnesses to the incident, and Plaintiff's signed, sworn proof of loss.  On the proof of loss, Plaintiff claimed all three scheduled jewelry items for $137,200.00.

On September 29, 2020, Plaintiff's counsel offered to send photos of Plaintiff wearing the jewelry but never did.

The initial police report did not include theft of the scheduled items.  On October 5, 2020, Plaintiff's counsel supplemented the police report to report the theft of the scheduled jewelry and the pouch.

During State Farm's investigation, questions arose regarding the appraisals that Plaintiff submitted to State Farm to substantiate the value of the scheduled items.  Specifically, State Farm questioned whether Plaintiff violated the Policy's Concealment or Fraud provision; whether the Loss was accidental in nature; and whether Plaintiff cooperated with the Policy's Duties After Loss provision.

Pursuant to the terms and conditions of the Policy, State Farm required Plaintiff to submit to an examination under oath ("EUO").  On November 2, 2020, State Farm's counsel wrote to Plaintiff's counsel and scheduled Plaintiff's EUO for 10:00 a.m. on November 5, 2020, in order to accommodate Plaintiff's desire to conduct the EUO promptly.   State Farm also required that Plaintiff provide documents and information material to State Farm's investigation of the Claim, including:

- Originals of all photographs of property, point of sale receipts, invoices, purchase orders, bills of sale, cancelled checks and bank statements, charge account and merchant records which reflect the date of purchase, purchase price, place of purchase, and description of any and all property Plaintiff claimed was the subject of this Loss.

- All appraisals, estimates, or valuations of any property which is the subject of this Claim dated within 12 months of the Loss.

- All bank statements, cancelled checks, charge account receipts, charge account statements, or other such documents which refer or relate to any item which is the subject of this Claim.

- Personal income tax returns filed with any state or federal government for the years 2018 and 2019.

- All bank statements related to any deposit account held in Plaintiff's name or jointly with another and which reflect all transaction detail for the period of two months before the purchase of any and all property claimed in the Loss.

- All statements for each credit card held in Plaintiff's name or jointly with another and reflecting all transaction detail for all property claimed in the Loss, if any.

- All personal cell phone service statements for the period September 6, 2020 to September 7, 2020, reflecting all call details and transactions.

- Documents supporting Plaintiff's current residence, including but not limited to utility bills, a mortgage statement, and/or a lease agreement.

- A copy of the receipt for the Louis Vuitton bag that contained Plaintiff's jewelry on September 6, 2020.

Plaintiff's EUO convened on November 5, 2020.  Plaintiff reported that he flew to Atlanta, Georgia from Los Angeles, California a few days before the Loss. The day of the Loss, before the alleged theft occurred, Plaintiff spent the day with an Atlanta radio DJ named Stu.  Plaintiff and Stu met friends at The Cheetah, a

well-known Atlanta nightclub, around 9:00 p.m. and left The Cheetah when it closed.  According to Plaintiff, vehicles in the parking lot were unable to leave because they were "blocked in" by two other cars.  Plaintiff testified that when he returned to his car, two men and a woman exited an SUV that was blocking the exit holding guns.  Plaintiff and Stu exited Plaintiff's vehicle to "take cover" from the gun shots.  At that point, one of the men from the SUV stole Plaintiff's vehicle. Plaintiff was subsequently arrested and charged with possession of firearms by a convicted felon.  At his EUO, Plaintiff testified that he was unsure why he was arrested, and he denied having a gun, shooting a gun, or being arrested for having a gun.

Plaintiff reported that he had two Louis Vuitton bags in his car at the time it was stolen.  One was a duffel bag with personal items for spending the night at the St. Regis hotel in Atlanta, where he asserted that he had a reservation.  The other was the "pouch" bag which contained the three scheduled jewelry items.  Plaintiff testified that when he exited his car to "take cover," he did not take the bag with him, so it was in the car when it was stolen.  Upon learning that his car had been recovered, Plaintiff went to the tow yard and discovered that his "pouch" bag was stolen, as well as some other personal items from the Louis Vuitton duffel bag from his trunk.  The Louis Vuitton bag itself was not stolen.

Plaintiff reported that he purchased the scheduled Rolex watch from Alex the Jeweler, Inc. in Roswell, Georgia.  Plaintiff then took the watch to Johnny Dang & Co. in Houston, Texas, to have a casing and diamond band prepared for the watch.  Plaintiff also reported that he purchased the scheduled diamond ring from Aydin Jewelers, LLC in Atlanta, Georgia.  Plaintiff said he purchased the scheduled diamond band from a jeweler named Tony.  Plaintiff did not know Tony's full name or phone number, but Plaintiff's unnamed friend has Tony's contact information.

Plaintiff's EUO was suspended pending Plaintiff's submission of the requested documents and information.

On November 19, 2020, the EUO transcript was mailed to Plaintiff's attorney by certified mail.

On November 24, 2020, Plaintiff's counsel called State Farm's counsel and repeatedly asked why the requested documents were necessary and whether State Farm believed Plaintiff was defrauding the company.  State Farm's counsel explained that State Farm had not made a decision on the Claim.  Plaintiff's attorney asked if State Farm would bifurcate the Claim and pay for the other jewelry minus the diamond band, which State Farm declined.

On December 1, 2020, State Farm's counsel wrote to Plaintiff's counsel and reiterated State Farm's request for the documents identified in State Farm's letter dated November 2, 2020.   State Farm also requested new, specific documents related to information learned during Plaintiff's EUO, including:

- Tony's full name and contact information and the name and contact information for Plaintiff's friend who introduced Plaintiff to Tony.

- A copy of the police inventory for the release of Plaintiff's vehicle.

- Flight information related to checking Plaintiff's luggage or carrying on luggage for Plaintiff's flight to Georgia prior to the Loss.

On December 2, 2020, Plaintiff's counsel wrote to State Farm's counsel and objected to State Farm's request to provide purchase receipts, cancelled checks, wire documentation, or any other documentation meant to establish the purchase price of the jewelry.   In his letter, Plaintiff's counsel also acknowledged that State Farm should not pay for the "enhanced value" of the scheduled watch because Plaintiff obtained the Policy before additional work was performed.

On December 16, 2020, Plaintiff's counsel emailed State Farm's counsel and confirmed that he received the EUO transcript.   However, Plaintiff did not execute the errata sheet as required by the Policy prior to filing suit against

State Farm.  He also requested a copy of Plaintiff's Policy, which State Farm subsequently provided.

On December 18, 2020, State Farm's counsel wrote to Plaintiff's counsel and reiterated State Farm's demand for the requested documents.  The letter enclosed another copy of State Farm's letter dated December 1, 2020, which fully set forth the document requests.  The letter also reminded Plaintiff's counsel of the Policy's Suit Against Us provision.  In response, Plaintiff's counsel threatened suit.

On December 23, 2020, Plaintiff filed his Complaint against State Farm Florida Insurance Company.  As of that date, Plaintiff had not complied with the examination under oath provisions of the Policy and had not submitted documentation that was material and necessary for State Farm to complete its investigation of the claim.  In addition, the above-referenced coverage questions remained unresolved.

Even if there was coverage for the Loss, the Claim was not yet payable when Love filed suit.  The suit was premature in breach of the Policy.

**(4)    Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative the case law which Defendant contends are applicable to this action.**

State Farm personal articles policy number 59-CK-S034-0 is applicable to this action, along with case law applicable to insurance policy interpretation and

breach of contract principles, including but not limited to *Marchman v. Grange Mut. Ins. Co.*, 232 Ga. App. 481, 500 S.E.2d 659 (1998) and *Res. Life Ins. Co. v. Davis*, 224 Ga. 665, 164 S.E.2d 132 (1968).

Basic breach of contract principles are applicable to this action. For instance, in order to establish a breach of contract, Plaintiff must show that State Farm breached a duty owed under the contract. <u>Liberty v. Storage Trust Props., L.P.</u>, 267 Ga. App. 905 (2004).

Law regarding insurance contract interpretation is applicable ot this action. *Horace Mann Insurance Co. v. Drury*, 213 Ga. App. 321, 445 S.E.2d 272 (1994); *State Farm Fire & Cas. Co. v. Moss*, 212 Ga. App. 326, 441 S.E.2d 809 (1994); *Merritt v. State Farm Fire & Cas. Co.*, 218 Ga. App. 652, 463 S.E.2d 42 (1995); *Continental Cas. Co. v. H.S.I. Financial Services*, 266 Ga. 260, 466 S.E.2d 4 (1996); *Stinson v. Allstate Ins. Co.*, 212 Ga. App. 179, 441 S.E.2d 453 (1994); O.C.G.A. § 16-5-60; O.C.G.A. § 16-5-3); *American Family Mut. Ins. Co. v. Hadley*, 648 N.W.2d 769 (Neb. 2002).

Additionally, case law regarding an insured's obligation to comply with their duties under the Policy is applicable here, including *Halcome v. Cincinnati Ins. Co.*, 254 Ga. 742 (1985); *Allstate Ins. Co. v. Hamler*, 247 Ga. 574 (2001); and their progeny.

Further, case law regarding burden of proof in an insurance coverage dispute is applicable to this action, including but not limited to *Chix v. Georgia Farm Bureau Ins. Co.*, 150 Ga. App. 453, 258 S.E.2d 208 (1979); *State Auto Prop. & Cas. Co. v. Matty*, No. 4:08-CV-98-CDL, 2010 U.S. Dist. LEXIS 100125 (M.D. Ga. Sep. 23, 2010); and *Res. Life Ins. Co. v. Davis*, 224 Ga. 665, 164 S.E.2d 132 (1968).

The law governing bad faith, O.C.G.A. § 33-4-6, and interpretive case law is applicable here.

State Farm reserves the right to rely on additional case law and statutes not cited above.

**(5)** **Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)**

*See* Attachment A. State Farm reserves the right to supplement its initial disclosure.

**(6)     Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.  For all experts described in FED. R. CIV. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.  (Attach expert witness list and written reports to Initial Disclosures as Attachment B.)**

*See* Attachment B.  State Farm has not identified a testifying expert at this time.  State Farm reserve the right to supplement and amend this response as the case progresses.

**(7)     Provide a copy of, or description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

*See* Attachment C.  State Farm reserve the right to supplement its response to this initial disclosure.  Further, although State Farm has provided a list of documents, State Farm reserves the right to object to the production of certain documents based on privilege and other grounds.

**(8)    In the space provided below, provide a computation of any category of damages claimed by you.  In addition, include a copy of, or describe by  category and location of, the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying under FED. R. CIV. P. 34.  (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

State Farm is not claiming any damages at this time but will supplement this

response if necessary as discovery continues.

**(9)    If defendant contends that some other person or legal entity is, in whole or in part, liable to the plaintiff or defendant in this matter, state the full name, address, and telephone number of such person or entity and describe in detail the basis of such liability.**

State Farm does not contend at this time that another person or legal entity is

liable, in whole or in part, to Plaintiff.

**(10)    Attach for inspection and copying as under FED. R. CIV. P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments to satisfy the judgment.  (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

*See* Attachment E.

This _____26th_____ day of March, 2021.

Respectfully submitted,

SWIFT, CURRIE, McGHEE & HIERS

_/s/  Kristen M. Vigilant_____
Rebecca E. Strickland
Georgia Bar No. 358183
Kristen M. Vigilant
Georgia Bar No. 191460
**_Attorneys for State Farm Florida_**
**_Insurance Company_**

The Peachtree – Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
rebecca.strickland@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## ATTACHMENT A

The following individuals/entities are likely to have discoverable information that State Farm may use to support its defenses:

1.    Plaintiff Lonnie Love
10450 Belladrum
Alpharetta, Georgia 30022
*Contact through Plaintiff's counsel.*

2.    Shawn Hogge
Fred Daniels
State Farm Florida Insurance Company
*Contact through counsel for State Farm.*

These individuals have information regarding State Farm's investigation of the Claim from the date the Loss occurred through the date the Complaint was filed.

3.    Alex the Jeweler, Inc.
6631 Roswell Road, Suite E
Sandy Springs, Georgia 30328
Tel: (404) 256-0675

Plaintiff reported that he purchased the scheduled watch from Alex the Jeweler, Inc. Plaintiff submitted an appraisal reportedly prepared by Alex the Jeweler, Inc. to his insurance agent.

4.    Aydin Jewelers, LLC
2955 Peachtree Rd, Suite C
Atlanta, Georgia 30305
Tel: (404) 256-0675

Plaintiff reported that he purchased a scheduled diamond ring from Aydin Jewelers, LLC. Plaintiff submitted an appraisal reportedly prepared by Aydin Jewelers, LLC to his insurance agent.

5.      Universal Gemological Laboratory, Inc.
        654 N Wellwood Ave, Ste 313
        Lindenhurst, New York 11757

        Plaintiff reported that Universal Gemological Laboratory, Inc. prepared an
        appraisal for a scheduled jewelry item.

6.      Gemological Institute of America, Inc.
        5345 Armada Drive
        Carlsbad, California 92008

        The appraisal by Aydin Jewelers, LLC included a report prepared by
        Gemological Institute of America, Inc.

7.      Johnny Dang & Co.
        6224 Richmond Ave
        Houston, Texas 77057-6212
        Tel: (713) 777-2026

        Plaintiff reported to State Farm that Johnny Dang & Co. prepared a diamond
        casing and band for a scheduled watch after the appraisal of the watch was
        completed.

8.      Tony

        Plaintiff reported that he purchased the scheduled diamond band from an
        jeweler named Tony.

9.      Brenda S. Henriquez
        Henriquez Ins. and Fin Svcs., Inc.
        18401 Miramar Parkway
        Miramar, Florida 33029-5802
        Tel: (954) 613-1010

        Ms. Henriquez is Plaintiff's insurance agent for personal articles policy
        number policy number 59-CK-S034-0.

10.   Antoine Schand ("Stu")

Plaintiff reported that he was with Mr. Schand during the day preceding the Loss and at the time of the Loss.

11.   International Follies, Inc. d/b/a The Cheetah
887 Spring St NW
Atlanta, Georgia 30308-1006
Tel: (404) 724-2330

Plaintiff reported that the scheduled jewelry items were stolen while he was retrieving his vehicle from the valet at The Cheetah.

12.   Officer J. Mach
Crime Scene Technician Benson
Investigator Barber
Sgt. Matthew
Lt. Collins
Officer White
Officer S. Tran
Atlanta Police Department
226 Peachtree St SW
Atlanta, Georgia 30303
Tel: (404) 614-6544

Upon information and belief, Officer J. Mach arrested Plaintiff on the night of the Loss, and Officer White later transported Plaintiff from Grady Hospital to Fulton County Jail.  The remaining individuals identified either assisted in preparing related police reports or were identified in police reports.  The Atlanta Police Department recovered Plaintiff's vehicle after the Loss.

13.   Jeff Glover
Tel: (678) 523-4321

Upon information and belief, Mr. Glover videotaped the incident at The Cheetah on his cell phone.

14.   Michael Leslie

Upon information and belief, the Atlanta Police Department arrested Mr. Leslie in connection with a shooting at The Cheetah on the night of the Loss.

15.   St. Regis Atlanta
88 West Paces Ferry Road
Atlanta, Georgia 30305
Tel: (404) 563-7900

Plaintiff reported that he had a reservation at the St. Regis Atlanta the night of the Loss.

16.   Teronda

Plaintiff's girlfriend, Teronda, may have information about the Loss and/or Claim.

## **ATTACHMENT B**

State Farm has not identified a testifying expert at this time.  State Farm reserves the right to supplement and amend this response as the case progresses.

## ATTACHMENT C

The following documents, data compilations, electronically stored information, and/or tangible things in Defendants possession, custody, or control may be used to support their defenses.  Any privileged or otherwise protected portions of these documents will be withheld from production or redacted accordingly.

1.  A certified copy of State Farm personal articles policy number 59-CK-S034-0;

2.  Reservation of rights letter from State Farm to Plaintiff dated October 9, 2020;

3.  Correspondence from Plaintiff's counsel to State Farm and/or its counsel dated September 21, 2020; September 24, 2020; September 29, 2020; October 12, 2020; November 10, 2020; November 24, 2020; December 16, 2020; December 2, 2020; December 18, 2020;

4.  Correspondence from State Farm and/or its counsel to Plaintiff's counsel dated September 22, 2020; September 23, 2020; September 24, 2020; November 2, 2020; November 24, 2020; December 1, 2020; December 18, 2020;

5.  Plaintiff's purported proof of loss dated September 24, 2020;

6.  Appraisals submitted by Plaintiff, which were reportedly prepared by Alex the Jeweler, Inc.; Aydin Jewelers, LLC; Universal Gemological Laboratory, Inc.; and Gemological Institute of America, Inc.; and

7.  The police report and supplemental reports related to incident.

State Farm reserves the right to supplement and amend this response as the case progresses.

## **ATTACHMENT D**

State Farm is not claiming any damages at this time but will supplement this response if necessary as discovery continues.

## **ATTACHMENT E**

Please see the attached certified copy of State Farm personal articles policy

number 59-CK-S034-0.



## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Florida Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 59-CK-S034-0 including any endorsements, if applicable, for the policy term(s) 06/15/2020 to 06/15/2021 and insuring LOVE, LONNIE based on available records.

The policy was in effect on the loss date of 09/06/2020.

Lidia Diaz
Underwriter
Date: 02/02/2021

**State Farm Florida Insurance Company**
A Stock Company With Home Offices in Winter Haven, Florida

AMENDED AUG 10 2020

Po Box 88049
Atlanta GA 30356-9901

**Named Insured**

AT1
    000079   0046     H-19-7451-FA6F      P  F
LOVE, LONNIE

ATLANTA GA ▮▮▮▮▮▮▮▮



ST-
0102-0005

**DECLARATIONS PAGE**

| Policy Number | **59-CK-S034-0** |
|---|---|

| Policy Period | Effective Date | Expiration Date |
|---|---|---|
| 12 Months | JUN 15 2020 | JUN 15 2021 |

The policy period begins and ends at 12:01 am standard time at the named insured's address.

---

# PERSONAL ARTICLES POLICY

**AUTOMATIC RENEWAL** - If the **POLICY PERIOD** is shown as **12 MONTHS**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period.  If this policy is terminated we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

For questions, problems, or to obtain information about coverage call:    954-613-1010

| Class of Property | Amount of Insurance | |
|---|---|---|
| Jewelry as scheduled | $      137,200 | |

Your policy is amended AUG 10 2020
  JEWELRY COVERAGE CHANGED

**(SCHEDULE ATTACHED)**

| Forms, Options, and Endorsements | | **ENDORSEMENT PREMIUM** |
|---|---|---|
| PERSONAL ARTICLES POLICY | FP-7942 | INCREASE |
| AMENDATORY ENDORSEMENT | FE-7749 | $  ▮▮▮▮▮ |
| LOSS SETTLEMENT ENDORSEMENT | FE-3357 | |

---

**NOTICE:   We have the option of repairing or replacing the lost or damaged property at our cost.  If we agree to a cash settlement, we will pay you no more than our cost to replace the item.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

**Your policy consists of this page, any endorsements and the policy form. PLEASE KEEP THESE TOGETHER.**

FP-7070.3C

 0202    1 5 1   I
N              Prepared    SEP 15 2020

**HENRIQUEZ INS AND FIN SVCS INC**
954-613-1010

555-7020 c.1  (o1f0391c)  Rev. 03-2002

39

**CONTINUED FROM FRONT SIDE**

**PERSONAL ARTICLES POLICY**

| Class of Property | Amount of Insurance | |
|---|---|---|
| | | |
| | | |
| Forms, Options, and Endorsements | | |
| | | |

BK

o1f0392d
Rev. 07-2002

H- 7451-FA6F              P  F
000079  0046

LOVE, LONNIE

**Named Insured**

ST-
0202-0005

Property Covered:    Jewelry

| Item Number | Description | Coverage Amount |
|-------------|-------------|-----------------|
| 3 added | GENTS RND BRILL CUT DIA PAVE SET BAND RING, MOUNTING IS CUTSTOM MADE OF 14K WG, APPROX 4.50 CTW, CLARITY VS2-SI2, COLOR G | $    9,500 |

(This Schedule page reflects only the items that were added,
deleted or changed on the date indicated above.   The total
coverage amount is indicated on the amended dec page.)

BK



State Farm®
**Personal Articles
Policy**

FP-7942

## TABLE OF CONTENTS

### DECLARATIONS

**Your Name**
**Policy Period**
**Classes of Property**
**Amounts of Insurance**
**Deductibles**

**Beginning on Page**

TABLE OF CONTENTS ......................................................................................................1

PROPERTY COVERED ......................................................................................................2

TERRITORIAL LIMITS ......................................................................................................2

LOSSES INSURED AND LOSSES NOT INSURED ..................................................2

CONDITIONS ......................................................................................................................3

SPECIAL CONDITIONS ....................................................................................................5

OPTIONAL POLICY PROVISIONS ................................................................................6

## PERSONAL ARTICLES POLICY

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident in the same household.  "We", "us" and "our" refer to the Company shown in the Declarations.

## PROPERTY COVERED

We cover the Classes of Property shown in the Declarations.

## TERRITORIAL LIMITS

We cover the property described while it is anywhere in the world. However, Fine Arts are covered only while within the United States and Canada.

## LOSSES INSURED AND LOSSES NOT INSURED

We insure for accidental direct physical loss or damage to the property covered except loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event which contributes concurrently or in any sequence to the loss or damage.

1.  War, including:

    a.  undeclared war;

    b.  civil war;

    c.  insurrection;

    d.  rebellion;

    e.  revolution;

    f.  warlike act by a military force or military personnel;

    g.  destruction, seizure or use for a military purpose; or

    h.  any effect of any of these.

    Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

2.  Seizure or destruction under quarantine or customs regulations.

3.  Any order or law of a governmental or municipal authority.

4.  Risks of contraband, illegal transportation or trade.

5.  Nuclear Hazard, meaning:

    a.  any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused; and

    b.  any effect of any of these.

    Loss caused by the nuclear hazard is not considered loss caused by fire, explosion or smoke.  Direct loss by fire resulting from the nuclear hazard is covered.

6.  Mechanical breakdown, wear and tear, gradual deterioration and inherent vice.

7.  Vermin or insects.

## SPECIAL EXCLUSIONS

**This policy does not apply:**

1.  if Fine Arts are covered:

    a.  to damage caused by any repairing, restoration or retouching process;

    b.  to property on exhibition at fairgrounds or on the premises of national or international expositions, unless the premises are covered by this policy.

2.  if Sports Equipment is covered:

    a.  to loss or damage caused by:

(1) any process of refinishing, renovating or repairing;

(2) dampness of atmosphere and/or extremes of temperature;

(3) inherent defect or faulty manufacture;

(4) rust, fouling or explosion of firearms;

b. to breakage, marring, scratching, tearing, or denting unless caused by fire, thieves or accidents to conveyances;

c. to infidelity of Insured's employees or persons to whom the covered property may be entrusted or rented;

d. to loss or damage to:

(1) outboard motors, boats and/or their accessories;

(2) bicycles, their equipment or accessories; and

(3) equipment, clothing or accessories used in connection with the game of golf.

3. if Stamp and Coin Collections are covered:

a. to fading, creasing, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature gradual depreciation, or damage from handling or being worked upon;

b. to disappearance of individual stamps, coins or other items unless the item is described and scheduled with a specific amount of insurance, or if the item is mounted in a volume and the page to which it is attached is also lost;

c. to loss of or damage to property which is:

(1) in the custody of transportation companies unless such shipments are made by railway express or armored car. Shipments by mail are covered only if made by registered mail or insured parcel post; or

(2) not an actual part of a stamp, money or numismatic collection.

d. to theft from any unattended automobile unless in the custody of railway express, armored motor car companies, or while being shipped by registered mail or insured parcel post.

## CONDITIONS

1. **Conformity to State Law**. When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

2. **Concealment or Fraud**. This entire policy will be void if, whether before or after a loss, you have intentionally concealed or misrepresented a material fact or circumstance relating to this insurance.

3. **Loss Settlement**. We have the option of repairing or replacing the lost or damaged property. Unless otherwise stated in this policy, covered property values will be determined at the time of loss or damage. We will pay the cost of repair or replacement, but not more than the smallest of the following amounts:

a. the full amount of our cost to repair the property to its condition immediately prior to the loss or damage;

b. the full amount of our cost to replace the item with one substantially identical to the item lost or damaged;

c. any special limit of liability described in this policy; or

d. the limit of liability applicable to the property.

4. **Loss to a Pair or Set**. In case of loss to a pair or set we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

5. **Loss Clause**. The amount of insurance under this policy will not be reduced except for a total loss of a scheduled item. We will refund the unearned premium applicable to such item after the loss or you may apply

it to the premium due for the replacement of the scheduled item.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.

The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of your residence to select an umpire. The appraisers will then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.

If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by you and us.

7. **Your Duties After Loss**. In case of a covered loss occurs, you must:

   a. protect the property from further loss and take all steps possible to minimize the loss. Expenses incurred will be borne by you and us proportionate to our respective interests;

   b. report as soon as practicable in writing to us or our agent any loss or damage which may become a claim under this policy (In case of theft, the police are also to be notified); and

   c. file with us or our agent, within 90 days after discovery of the loss, a signed sworn proof of loss. This will state the facts and amount of the loss to the best of your knowledge.

8. **Examination Under Oath**. You agree:

   a. to be examined under oath and subscribe to the same as often as we reasonably require;

   b. that employees, members of your household or others will be produced for examination under oath to the extent that it is within your power to do so;

   c. to produce, if requested, the remains of the covered property; and

   d. to produce such records as we may need to verify the claim and its amount, and to permit copies of such records to be made if needed.

9. **Suit Against Us**. No action will be brought unless:

   a. there has been compliance with the policy provisions; and

   b. the loss has become payable as specified in the **CONDITION** entitled "**Loss Payment**".

   Any action must be started within one year after the occurrence causing loss or damage.

10. **Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your Proof of Loss and:

    a. we reach agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Subrogation**. In the event of loss which we believe may be collectible from others, we may pay in the form of a loan to be repaid out of any recoveries from others. You will cooperate in every way possible to assist in such recovery from others. We will, at our expense, take over your rights against others to the extent of our payment.

12. **No Benefit to Bailee**. No person or organization having custody of the property and to be paid for services will benefit from this insurance.

13. **Other Insurance**. If at the time of loss or damage there is other insurance available which would apply to the property in the absence of this policy, the insurance under this policy will apply only as excess insurance over the other insurance.

14. **Cancellation**.

    a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect.

    b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or to our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled by us, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation.

d. Sometimes the return premium is not refunded with the notice of cancellation or when this policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

15. **Non-Renewal**. We may elect not to renew this policy. We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

16. **Waiver or Change of Policy Provisions**. A waiver or change of any policy provision must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

17. **Liberalization Clause**. If we adopt a revision which would broaden coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

18. **Newly Acquired Property**.

a. With respect to jewelry, furs, cameras and musical instruments, we cover newly acquired property of a class already covered. Coverage will not exceed 25% of the amount of insurance for that class of property or $10,000, whichever is less. You must:

(1) report this newly acquired property to us within 30 days of acquisition; and

(2) pay the additional premium from the date acquired.

b. With respect to fine arts, we cover newly acquired property of this class if already covered. Coverage will not exceed 25% of the amount of insurance for this class. You must:

(1) report this newly acquired property to us within 30 days of acquisition; and

(2) pay the additional premium from the date acquired.

19. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits then this policy is void and we will not pay you or any other insured for this loss.

## SPECIAL CONDITIONS

1. **Fine Arts**. You agree that the covered property will be packed and unpacked by competent packers.

We agree that the amount shown for each scheduled item is the value of the item.

In case of the total loss of any item or items which are part of a set:

a. we agree to pay you the full value of the set as shown on the schedule; and

b. you agree to surrender the remaining items of the set to us.

2 **Golfer's Equipment**. Golfer's equipment includes golf clubs, golf clothing and golf equipment (not watches,

5

jewelry and stock for sale) which are your property. Your other clothing is covered while in a locker located in a building used in connection with the game of golf.

Golf balls are covered only if loss is caused by fire or burglary. Burglary coverage applies only if the golf balls are taken from within a building, room or locker by a person making unlawful entry by force. There must be visible marks of forced entry upon the premises.

3. **Musical Instruments**.  You agree that no instrument played for pay during the policy term will be covered. This condition applies unless changed by endorsement and additional premium is paid at our current rates.

4. **Silverware**.  Pens, pencils, flasks, smoking implements or accessories or items of personal adornment are not covered as "Silverware".

5. **Sports Equipment**.  In case of loss we will pay no greater proportion of the loss than the amount of insurance bears to the actual value of the property at the time of loss.

6. **Stamp and Coin Collections**.

   a.   We cover:

       (1)  postage stamps and other philatelic property owned by or in custody or control of the Insured.  This includes the books, pages and/or mountings used; and

       (2)  rare and current coins, medals, paper money, bank notes, tokens of money and other numismatic property owned by or in custody or control of the Insured.  This includes coin albums, containers, frames, cards and display cabinets in use with such collection.

   b.   In case of loss the amount payable will be determined as follows:

       (1)  If loss is to a scheduled item we will pay no more than the amount shown.

       (2)  If loss is to scheduled property described as pairs, strips, blocks, series, sheets, covers, frames, cards or the like, we will pay in the event of total loss no more than the amount shown.  In the event of a partial loss we will pay no more than the cash market value of the whole set less the cash market value of the remainder at the time of loss.  It is agreed that if the property is covered for less than the cash market value payment will be limited to the proportion that the amount of insurance bears to the cash market value.

       (3)  In all other cases of loss to covered property, we will pay no more than the actual cash market value of the property at the time of loss.  Payment will not exceed $250 for:

           (a)  one stamp, coin or other individual article; or

           (b)  one pair, strip, block, series, sheet, cover, frame, card or the like.

       (4)  We will not pay a greater proportion of a loss on unscheduled property than the amount of insurance on that unscheduled property bears to the cash market value at the time of loss.

7. **Cameras**.  You agree that no camera used for pay during the policy term will be covered.  This condition applies unless changed by endorsement and additional premium is paid at our current rates.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as shown in the Declarations or Extension Certificate.

**Option I - Inflation Coverage**.

1. This option will apply only to those classes of property which indicate in the schedule that "Inflation Coverage Applies".

2. The amount of insurance applicable to those classes of property will be increased at the same rate as the increase in the inflation coverage index shown in the Declarations.

   a.   To find the limits on a given date:

       (1)  divide the index on that date by the index as of the effective date of the inflation coverage provision; then

       (2)  multiply the resulting factor by the amount of insurance applicable to the property covered.

The limits of liability will not be reduced to less than the amounts shown in the schedule.

   b.   If during the term of this policy, you:

       (1)  change the amount of insurance on any property to which Inflation Coverage applies; or

(2) add property to which Inflation Coverage applies;

the effective date of this Inflation Coverage on that property is changed to coincide with the effective date of the change or addition.

**Option Q - Broad Pair and Set Coverage**.  In the event of the total loss of an item or items which are part of a pair or set, we agree to pay you the full amount of the value of such pair or set as specified in the schedule (IN ACCORDANCE WITH THE LOSS SETTLEMENT CONDITION).  You agree to surrender the remaining item or items of the pair or set to us.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

_Lynne M. Yauell_          Secretary                    _[signature]_          President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment is proper.

7

FE-7749
(10/93)

# AMENDATORY ENDORSEMENT
## (Florida)

**CONDITIONS**

**Suit Against Us**, reference to "one year" is changed to "five years".

**Loss Payment** is replaced with the following:

**Loss Payment**. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

a. 20 days after we receive your proof of loss and reach agreement with you; or

b. 60 days after we receive your proof of loss and:

(1) there is an entry of a final judgment; or

(2) there is a filing of an appraisal award with us.

**Cancellation** is replaced with the following:

**Cancellation**.

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 90 days and is not a renewal with us, we may cancel for any reason. We may cancel, for any reason other than nonpayment of premium, by notifying you at least 20 days before the date cancellation takes effect. If we cancel because you have not paid the premium, we will notify you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 90 days or more, or at any time if it is a renewal with us, we may cancel if there has been a:

(a) material misstatement;

(b) failure to comply with underwriting requirements established by us within 90 days of the date this coverage takes effect;

(c) substantial change in the risk covered by this policy; or

(d) cancellation by us of all policies for a given class of insureds.

We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel at anniversary if there has been a:

(a) material misstatement;

FE-7749
(10/93)

(CONTINUED ON REVERSE SIDE)

Printed in U.S.A.

    (b) failure to comply with underwriting requirements established by us within 90 days of the date this coverage takes effect;

    (c) substantial change in the risk covered by this policy; or

    (d) cancellation by us of all policies for a given class of insureds.

    We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded.

When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

**Non-Renewal**, reference to "30 days" is changed to "45 days".

All other policy provisions apply.

## FE-3357 LOSS SETTLEMENT ENDORSEMENT

The following is added to the Loss Settlement provision of this policy:

Any property we pay for or replace becomes our property.

FE-3357

©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

## <u>LOCAL RULE 5.1C CERTIFICATION</u>

By signature below, counsel certifies that the foregoing pleading was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1C.

Respectfully submitted this ___26th___ day of March, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/  Kristen M. Vigilant*
Rebecca E. Strickland
Georgia Bar No. 358183
Kristen M. Vigilant
Georgia Bar No. 191460
**Attorneys for State Farm Florida Insurance Company**

The Peachtree – Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
rebecca.strickland@swiftcurrie.com
kristen.vigilant@swiftcurrie.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify I have this day electronically filed the foregoing ***Certificate*** with the Clerk of Court via the CM/ECF system, through which the Court will send notification to the following attorney:

Jamie B. Hernan, Esq.
The Hernan Law Firm, P.C.
10896 Crabapple Road
Roswell, Georgia 30075
jamie@hernanfirm.com
*Attorney for Plaintiff Lonnie Love*

This ___26th___ day of March, 2021.

SWIFT, CURRIE, McGHEE & HIERS

*/s/  Kristen M. Vigilant*
Rebecca E. Strickland
Georgia Bar No. 358183
Kristen M. Vigilant
Georgia Bar No. 191460
***Attorneys for State Farm Florida Insurance Company***

The Peachtree – Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 874-8800
Fax: (404) 888-6199
rebecca.strickland@swiftcurrie.com
kristen.vigilant@swiftcurrie.com