## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

LONNIE LOVE,               )
                                   )
              Plaintiff,      )
     v.                       )     CIVIL ACTION FILE
                                     )     NO. 1:21-cv-00786-ELR
STATE FARM FLORIDA       )
INSURANCE COMPANY,      )
                                     )
            Defendant.     )
_____ )

## PLAINTIFF'S INITIAL DISCLOSURES

Now Comes Plaintiff Lonnie Love, by and through the undersigned counsel, and submits his Initial Disclosures as required by Fed. R. Civ. P. 26 and LR 26.1, subject to the Motion to Remand filed by Plaintiff in this matter which asserts that the Notice of Removal filed by Defendant in this matter was untimely and this matter should be remanded to the State Court of Fulton County, Georgia. Reserving all rights and without waiving the claims set forth in Plaintiff's Motion to Remand, Plaintiff provides as follows:

**(1) State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.**

This is a claim for damages as set forth in the Complaint filed by Plaintiff including, without limitation, breach of contract, bad faith, unfair and discriminatory trade practices, punitive damages and costs of litigation.

Plaintiff purchased from Defendant a personal articles insurance policy in or around June 2020, by which Plaintiff insured certain articles of jewelry (Policy Number: 59-CK-S034-0, the "Policy"). The total value of jewelry insured by the Policy is no less than One Hundred Thirty Seven Thousand, Two Hundred Dollars and Zero Cents ($137,200.00, the "Insured Value"). In or around September 2020, Plaintiff was the victim of a theft of his personal property. As a result of such theft, Plaintiff's personal property was stolen and not returned including, without limitation, items insured by the Policy. The Plaintiff suffered economic damages in excess of the Insured Value. Plaintiff submitted a timely claim with Defendant pursuant to the Policy (the "Claim"). Defendant acted with bad faith in its handling of the Claim from the outset. The Claim was assigned to a fraud claims unit without any reasonable basis to do so. Defendant failed to secure the services of a third party jeweler or jewelry company to assess the value of the lost property and to determine whether or not such property could be replaced. Plaintiff cooperated with all reasonable requests of Defendant in connection with the Claim; however, Defendant processed the Claim in bad faith and, upon information and belief, with

no intention to pay Plaintiff the value of the Claim.   Defendant investigated Plaintiff as if Plaintiff was a criminal. Plaintiff received no reasonable explanation from Defendant as to why Defendant treated him in such a way. Defendant made unreasonable requests for documentation that were meant to harass and annoy Plaintiff and were not necessary for Defendant to verify the Claim and its amount. Upon information and belief, Defendant actions against Plaintiff and refusal to pay the Claim were motivated by bias. Defendant breached its contract with Plaintiff, acted in bad faith, engaged in unfair acts or practices in connection with the insurance business in violation of applicable law including, without limitation, O.C.G.A. § 33-4-6, and acted in a willful and malicious manner against Plaintiff.

The issues for determination are whether or not Defendant breached its contract with Plaintiff, acted in bad faith, engaged in unfair acts or practices in connection with the insurance business, should be required to pay punitive damages, should be required to reimburse Plaintiff's costs of litigation pursuant to O.C.G.A. § 13-6-11, and the amount of the damages due to Plaintiff.

**(2) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

The personal articles policy with Defendant (Policy Number 59-CK-S034-0) is applicable to this action and the associated rules, statutes, case law and regulations associated with insurance policies and breach of contract.

Contract law, interpretation of contracts principles and breach of contract principles, rules, statutes, case law and regulations are applicable to this action.

Principles, rules, statutes, case law and regulations governing bad faith processing of insurance claims apply to this matter.

O.C.G.A. § 33-4-6 and associated case law applies in connection with Plaintiff's claim of unfair acts or practices in the business of insurance.

O.C.G.A. § 13-6-11 and associated case law applies in connection with Plaintiff's claim for costs of litigation.

Plaintiff reserves the right to rely on additional rules, statutes and case law not set forth herein. Plaintiff will supplement this response with additional illustrative case law.

**(3) Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)**

Please see witness list attached as Attachment A and incorporated herein. Plaintiff reserves the right to supplement this response with additional witnesses during the progress of this matter.

> **(4) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)**

Please see Attachment B. Plaintiff has not yet retained an expert witness in connection with this matter but reserves the right to do so and to amend this response as appropriate.

> **(5) Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.  (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

Please see list contained in Attachment C. Plaintiff reserves the right to supplement its response to this disclosure and object to the production of any documents on privilege and other grounds.

> **(6) In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material,**

**not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

The value of the jewelry stolen from Plaintiff is at least One Hundred Thirty Seven Thousand, Two Hundred Dollars and Zero Cents ($137,200.00). Defendant requested that Plaintiff choose from a list of jewelers provided by Defendant for the purpose of Defendant retaining the selected jeweler to establish the value of the Claim. To Plaintiff's knowledge, Defendant never retained the selected jeweler, Solomon Brothers. Plaintiff has suffered additional damages as a result of Defendant's actions, the amount of which shall be determined at the trial of this matter.

Please also see Attachment D. Plaintiff reserves the right to supplement this response during the progress of this matter.

(7) **Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

See Attachment E.

**(8) Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs cause of action and state the basis and extent of such interest.**

None known.


Respectfully submitted this 26th day of March 2021.

**THE HERNAN LAW FIRM, PC**

/s/ Jamie B. Hernan
Jamie B. Hernan, Esq.
Georgia Bar Number: 348555
10896 Crabapple Road
Roswell, Georgia 30075
Tel: (678) 275-4000
Fax: (678) 265-4000
Email: jamie@hernanfirm.com

**Attachment A**

The following individuals are likely to have discoverable information related to this matter (Plaintiff reserves the right to supplement this response as appropriate):

1. Plaintiff
   c/o The Hernan Law Firm PC
   Attention: Jamie B. Hernan
   10896 Crabapple Road
   Roswell, Georgia 30075
   Telephone: (678) 275-4000

2. Representatives identified by Defendant in its Initial Disclosures as representatives of Defendant.

3. Representative(s) of Defendant responsible for maintaining and/or processing personal articles policy claims.

4. Representative(s) of Defendant responsible for monitoring claims data and ensuring compliance with federal regulations regarding discrimination.

5. Alex the Jeweler, Inc.
   6631 Roswell Road, Suite E
   Sandy Springs, Georgia 30328
   Telephone: (404) 256-0675

   This jeweler sold jewelry insured by the Policy to Plaintiff, provided associated appraisal(s) and is aware of the Plaintiff's ownership of such jewelry.

6. Aydin Jewelers, LLC
   2955 Peachtree Road, Suite C
   Atlanta, Georgia 30305
   Telephone: (404) 525-7447

   This jeweler sold jewelry insured by the Policy to Plaintiff, provided
   associated appraisal(s) and is aware of the Plaintiff's ownership of such
   jewelry.

7. Johnny Dang & Co.
   6224 Richmond Avenue
   Houston, Texas 77057
   Telephone: (713) 777-2026

   This company made additional upgrades to jewelry insured by the Policy
   and is aware of the Plaintiff's ownership of such jewelry.

8. Solomon Brothers Jewelry
   3340 Peachtree Rd NE #1700
   Atlanta, Georgia 30326
   Telephone: (404) 266-0266

   This is the jeweler selected by Plaintiff from a list provided by Defendant of
   jewelers to be retained by Defendant to determine the value of the Claim.

9. Brenda S. Henriquez
   Henriquez Ins. And Fin Svcs., Inc.
   18401 Miramar Parkway
   Miramar, Florida 33029
   Telephone: (954) 613-1010

   This is the insurance agent who sold the personal articles policy that is the
   subject of this matter to Plaintiff.

10. Carolina Cayon
    Henriquez Ins. and Fin. Svcs., Inc.
    18401 Miramar Parkway
    Miramar, Florida 33029
    Telephone: (954) 613-1010

    This is an employee of the insurance agent who sold the personal articles
    policy that is the subject of this matter to Plaintiff.

11. International Follies, Inc. d/b/a The Cheetah Lounge
    887 Spring St NW
    Atlanta, Georgia 30308
    Telephone: (404) 724-2330

    This is the club operated at the location where Plaintiff's personal property
    was stolen. Such entity should have possession of surveillance video related
    to such incident.

12. Alexandria Executive Protection and Security Service LLC
    5511 Burnt Hickory Road
    Acworth, Georgia 30101
    Telephone: Unknown

    Upon information and belief, this is the company contracted to provide
    security services at the Cheetah Lounge on the date of the incident in which
    Plaintiff's personal property was stolen.

13. National Parking Solutions, LLC
    6100 Lake Forrest Drive, Suite 440
    Atlanta, Georgia 30328
    Telephone: Unknown

Upon information and belief, this is the company that was contracted to provide valet services at the Cheetah Lounge on the date of the incident in which Plaintiff's personal property was stolen.

**Attachment B**

Plaintiff has not retained or identified an expert witness at this time; however, Plaintiff reserves the right to retain or consult expert witnesses in this matter and to supplement this response as appropriate.

## **Attachment C**

The following documents, data compilations or other electronically stored information, and tangible things in Plaintiff's possession, custody, or control may be used to support Plaintiff's claim.  Plaintiff reserves the right to supplement and amend this response during the course of this matter.

1. State Farm Personal Articles Policy and Declarations Page (59-CK-S034-0)

2. Incident Report – City of Atlanta Police Department (Incident # 20-250-0338-00 and supplements)

3. Letter sent on behalf of Plaintiff to Officer Mach with the City of Atlanta Police Department dated October 2, 2020.

4. Appraisals submitted by Plaintiff to Defendant when setting up the Policy and during the course of the Claim for a 5.05 cts diamond ring, Oyster Perpetual Datejust II Rolex watch and approximately 4.50 cts diamond band ring.

5. Correspondence between counsel for Defendant and Plaintiff's counsel.

6. Correspondence between counsel for Plaintiff and Defendant's claims representatives.

7. Sworn Statement in Proof of Loss submitted to Defendant by Plaintiff at

   Defendant's request.

## **Attachment D**

The attached appraisals have been used in the calculation of damages in this matter.  Plaintiff reserves the right to supplement and amend this response during the course of this matter.

1. Appraisal – Diamond ring

2. Appraisal – Rolex Watch

3. Appraisal – Diamond Band Ring



# AYDIN ✦ JEWELERS

## *APPRAISAL*

***To Whom It May Concern:***

*This is to certify that we are engaged in the jewelry business appraising diamonds, watches, jewelry, and precious stones of all descriptions. We herewith certify that we have this day carefully examined the following listed and described articles, the property of:*

**NAME : Mr. Lonnie Love**

**ADDRESS: P.O. Box 19897 Atlanta, GA 30325**

*We estimate the value as listed for insurance or other purposes at the current retail value, excluding federal and other taxes. In making this Appraisal, we DO NOT agree to purchase or replace the articles.*

| DESCRIPTION | APPRAISAL VALUE |
|---|---|
| One diamond ring, 14kt. white gold, set with a single 5.05cts. radiant-cut diamond in the center, four prongs, measuring 10.55X8.93X6.13mm, J-color, SI2-clarity, GIA report#: 5191985382, with two (2) trapezoid-shaped diamonds surrounding, 0.90ct. total weight, fourteen (14) emerald-cut diamonds, 3.50cts. total weight, and fifty-six (56) round brilliant cut diamonds,1.95cts. total weight, shared and prong-set, G-color, VS1-clarity. | $98,500.00 |

The value is:
NINETY-EIGHT THOUSAND FIVE HUNDRED DOLLARS

*The foregoing Appraisal is made with the understanding that the Appraiser assumes no liability with respect to any action that may be taken on the basis of this Appraisal.*

_____
*Appraiser's Signature*

December 27, 2019
Date

---

***Manufacturer of Fine Jewelry, Loose Diamonds & Fine Watches***

2955 Peachtree Rd N.E., Suite C, Atlanta, GA 30305
404-848-9556



# GIA

## GIA NATURAL DIAMOND GRADING REPORT

January 18, 2019

### GRADING RESULTS

GIA Report Number ........... 5191985382
Shape and Cutting Style ...... Cut-Cornered Rectangular
Modified Brilliant
Measurements .................. 10.55 x 8.93 x 6.13 mm

Carat Weight .................... 5.05 carat
Color Grade ..................... J
Clarity Grade ................... SI2

### ADDITIONAL GRADING INFORMATION

Polish .......................... Very Good
Symmetry ........................ Good
Fluorescence .................... Faint
Comments: Additional clouds are not shown. Pinpoints
are not shown.

## PROPORTIONS



72%

68.7%

medium
thick

Profile not to actual proportions

## CLARITY CHARACTERISTICS



KEY TO SYMBOLS*
○ Crystal
∨ Feather
⌒ Cloud

*The symbols shown indicate the nature, position and approximate size of clarity characteristics. Not all characteristics may be shown. Details of finish are not shown.

FACSIMILE

This is a digital representation of the original GIA Report. This representation is not to be accepted in place of the original GIA Report and in no circumstance. The original GIA Report contains security features which are not represented on this facsimile.

## GRADING SCALES

| | GIA COLOR SCALE |
|---|---|
| COLORLESS | D E F |
| NEAR COLORLESS | G H I J |
| FAINT | K L M |
| VERY LIGHT | N O P Q R |
| LIGHT | S T U V W X Y Z |

| | GIA CLARITY SCALE |
|---|---|
| FLAWLESS | FL |
| INTERNALLY FLAWLESS | IF |
| VERY VERY SLIGHTLY INCLUDED | VVS₁ VVS₂ |
| VERY SLIGHTLY INCLUDED | VS₁ VS₂ |
| SLIGHTLY INCLUDED | SI₁ SI₂ |
| INCLUDED | I₁ I₂ I₃ |

GIA REPORT
5191985382

Verify this report at GIA.edu





# Appraisal Certificate
## — for —

Last Name ___Love___   First Name ___Lonnie D.___   Date __5/18/17__

Address ___2195 Defoor Hills Rd.  #J___

City ___Atlanta___   State ___GA___   Zip ___30318___

Current Markets:  Gold _____   Silver _____   Platinum _____

This is to certify that we have carefully examined the articles listed below and appraised those articles at current fair market replacement value. This certificate does not constitute an offer to purchase or replace articles.

| DESCRIPTION | APPRAISED VALUE |
|---|---|
| Oyster Perpetual Datejust II 41mm Stainless Steel Rolex watch, pave diamond dial, 6.00ct. diamond bezel, .20pts. each round diamond (30 in total). Serial No.: 44895947 Model No.: 72210 | Replacement Value: $29,200 |

Appraised values are based upon our estimates of size and quality of the aforementioned articles. Appraiser assumes no responsibility to any action which may be taken with respect to this document.

Appraised By ___Alexander Jeweler___   Store ___Owner___
(Print Please)

Appraiser's Signature ___Ankody Manbona___   Date __5/18/17__

STK.# APR-100.00

UNIVERSAL GEMOLOGICAL LABORATORY, INC.

# APPRAISAL REPORT

**UGL**

Independent Laboratory For
The Certification Of Diamonds
And Colored Stones

DATE 10/3/2012

CERTIFICATE NO: 3132314

**One Gent's Round Brilliant Cut Diamond Pave' Set Band Ring.**
**Mounting Is Custom Made Of 14 Kt White Gold.**
**Details Below:**
Carats: 4.50 Carats In Total Approximately
Measurements: 1.70-1.80 MM Each Approximately
Clarity: VS-2/SI-2
Color: G
Total Weight Of The Band Ring Is 10.3 Grams.



Photo may not be to scale and is for
general design and appearance purposes.

**COMMENTS**
Graded As Mounting Permits.  This Appraisal Is For insurance
Purposes.

This report is based on generally
accepted grading techniques.
Characteristics are determined using
millimeter gauge, master comparison
stones, UV Lamp, 10x loupe or
binocular microscope.

**Estimated Retail Value: $9,500.00**

LABORATORY REPORT

To Whom It May Concern:



*S. [signature]*

Svetlana Moshyakhova, G.G.(GIA)

UNIVERSAL GEMOLOGICAL LABORATORY
71 West 47th Street New York, N.Y. 10036 Suite 204 T: 212-921-3324  F: 212-921-4574 www.uglinc.com

IMPORTANT LIMITATIONS ON BACK
©2006 Universal Gemological Laboratory, Inc.

**Attachment E**

**StateFarm**

**State Farm Florida Insurance Company**
A Stock Company With Home Offices in Winter Haven, Florida

Po Box 88049
Atlanta GA 30356-9901

Named Insured

H 19 7451 FA6F          P   F

LOVE, LONNIE

**DECLARATIONS PAGE**

COVERAGE SUMMARY
OCT 26 2020

| Policy Number | 59-CK-S034-0 | |
|---|---|---|
| Policy Period | Effective Date | Expiration Date |
| 12 Months | JUN 15 2020 | JUN 15 2021 |

The policy period begins and ends at 12:01 am
standard time at the named insured's address.

## PERSONAL ARTICLES POLICY

**AUTOMATIC RENEWAL** - If the POLICY PERIOD is shown as **12 MONTHS**, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law.

For questions, problems, or to obtain information about coverage call: 954-613-1010

| Class of Property | Amount of Insurance |
|---|---|
| Jewelry as scheduled | ₵    137,200 |

| Forms, Options, and Endorsements | | POLICY PREMIUM | ₵    3,593.00 |
|---|---|---|---|
| PERSONAL ARTICLES POLICY | FP-7942 | | |
| AMENDATORY ENDORSEMENT | FE-7749 | | |
| LOSS SETTLEMENT ENDORSEMENT | FE-3357 | | |

**NOTICE:** We have the option of repairing or replacing the lost or damaged property at our cost. If we agree to a cash settlement, we will pay you no more than our cost to replace the item.

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

Your policy consists of this page, any endorsements and the policy form. PLEASE KEEP THESE TOGETHER.

FP-7070.3C

0616   251  I
N
555-7020 s.1 (s1f0391d)  Rev. 03-2002
39

Prepared    OCT 26 2020

HENRIQUEZ INS AND FIN SVCS INC
954-613-1010

CONTINUED FROM FRONT SIDE

**PERSONAL ARTICLES POLICY**

| Class of Property | Amount of Insurance | |
|---|---|---|
| | | |

Forms, Options, and Endorsements

o100392d
Rev. 07-2002

BK

**StateFarm**   59-CK-S034-0   ( 0617 )

FE-7749
(10/93)

## AMENDATORY ENDORSEMENT
### (Florida)

**CONDITIONS**

**Suit Against Us**, reference to "one year" is changed to "five years".

**Loss Payment** is replaced with the following:

**Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable:

a. 20 days after we receive your proof of loss and reach agreement with you; or

b. 60 days after we receive your proof of loss and:

(1) there is an entry of a final judgment; or

(2) there is a filing of an appraisal award with us.

**Cancellation** is replaced with the following:

**Cancellation.**

a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:

(1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

(2) When this policy has been in effect for less than 90 days and is not a renewal with us, we may cancel for any reason. We may cancel, for any reason other than nonpayment of premium, by notifying you at least 20 days before the date cancellation takes effect. If we cancel because you have not paid the premium, we will notify you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 90 days or more, or at any time if it is a renewal with us, we may cancel if there has been a:

(a) material misstatement;

(b) failure to comply with underwriting requirements established by us within 90 days of the date this coverage takes effect;

(c) substantial change in the risk covered by this policy; or

(d) cancellation by us of all policies for a given class of insureds.

We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel at anniversary if there has been a:

(a) material misstatement;

(b) failure to comply with underwriting requirements established by us within 90 days of the date this coverage takes effect;

(c) substantial change in the risk covered by this policy; or

(d) cancellation by us of all policies for a given class of insureds.

We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded.

When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

**Non-Renewal**, reference to "30 days" is changed to "45 days".

All other policy provisions apply.

FE-7749
(10/93)

(CONTINUED)

FE-3357
Page 1 of 1

## FE-3357 LOSS SETTLEMENT ENDORSEMENT

The following is added to the Loss Settlement provision of this policy:

Any property we pay for or replace becomes our property.

FE-3357

©, Copyright, State Farm Mutual Automobile Insurance Company, 2014

31



State Farm®
**Personal Articles
Policy**

FP-7942

## TABLE OF CONTENTS

### DECLARATIONS

**Your Name**
**Policy Period**
**Classes of Property**
**Amounts of Insurance**
**Deductibles**

Beginning on Page

TABLE OF CONTENTS ..................................................................................1

PROPERTY COVERED..................................................................................2

TERRITORIAL LIMITS ..................................................................................2

LOSSES INSURED AND LOSSES NOT INSURED ...................................2

CONDITIONS....................................................................................................3

SPECIAL CONDITIONS..................................................................................5

OPTIONAL POLICY PROVISIONS...............................................................6

## PERSONAL ARTICLES POLICY

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident in the same household. "We", "us" and "our" refer to the Company shown in the Declarations.

## PROPERTY COVERED

We cover the Classes of Property shown in the Declarations.

## TERRITORIAL LIMITS

We cover the property described while it is anywhere in the world. However, Fine Arts are covered only while within the United States and Canada.

## LOSSES INSURED AND LOSSES NOT INSURED

We insure for accidental direct physical loss or damage to the property covered except loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event which contributes concurrently or in any sequence to the loss or damage.

1. War, including:

   a. undeclared war;

   b. civil war;

   c. insurrection;

   d. rebellion;

   e. revolution;

   f. warlike act by a military force or military personnel;

   g. destruction, seizure or use for a military purpose; or

   h. any effect of any of these.

   Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

2. Seizure or destruction under quarantine or customs regulations.

3. Any order or law of a governmental or municipal authority.

4. Risks of contraband, illegal transportation or trade.

5. Nuclear Hazard, meaning:

   a. any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused; and

   b. any effect of any of these.

   Loss caused by the nuclear hazard is not considered loss caused by fire, explosion or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

6. Mechanical breakdown, wear and tear, gradual deterioration and inherent vice.

7. Vermin or insects.

## SPECIAL EXCLUSIONS

**This policy does not apply:**

1. if Fine Arts are covered:

   a. to damage caused by any repairing, restoration or retouching process;

   b. to property on exhibition at fairgrounds or on the premises of national or international expositions, unless the premises are covered by this policy.

2. if Sports Equipment is covered:

   a. to loss or damage caused by:

2

(1)  any process of refinishing, renovating or repairing;

(2)  dampness of atmosphere and/or extremes of temperature;

(3)  inherent defect or faulty manufacture;

(4)  rust, fouling or explosion of firearms;

b.  to breakage, marring, scratching, tearing, or denting unless caused by fire, thieves or accidents to conveyances;

c.  to infidelity of Insured's employees or persons to whom the covered property may be entrusted or rented;

d.  to loss or damage to:

(1)  outboard motors, boats and/or their accessories;

(2)  bicycles, their equipment or accessories; and

(3)  equipment, clothing or accessories used in connection with the game of golf.

3.  if Stamp and Coin Collections are covered:

a.  to fading, creasing, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature gradual depreciation, or damage from handling or being worked upon;

b.  to disappearance of individual stamps, coins or other items unless the item is described and scheduled with a specific amount of insurance, or if the item is mounted in a volume and the page to which it is attached is also lost;

c.  to loss of or damage to property which is:

(1)  in the custody of transportation companies unless such shipments are made by railway express or armored car. Shipments by mail are covered only if made by registered mail or insured parcel post; or

(2)  not an actual part of a stamp, money or numismatic collection.

d.  to theft from any unattended automobile unless in the custody of railway express, armored motor car companies, or while being shipped by registered mail or insured parcel post.

## CONDITIONS

1.  **Conformity to State Law.**  When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

2.  **Concealment or Fraud.**  This entire policy will be void if, whether before or after a loss, you have intentionally concealed or misrepresented a material fact or circumstance relating to this insurance.

3.  **Loss Settlement.**  We have the option of repairing or replacing the lost or damaged property. Unless otherwise stated in this policy, covered property values will be determined at the time of loss or damage. We will pay the cost of repair or replacement, but not more than the smallest of the following amounts:

a.  the full amount of our cost to repair the property to its condition immediately prior to the loss or damage;

b.  the full amount of our cost to replace the item with one substantially identical to the item lost or damaged;

c.  any special limit of liability described in this policy; or

d.  the limit of liability applicable to the property.

4.  **Loss to a Pair or Set.**  In case of loss to a pair or set we may elect to:

a.  repair or replace any part to restore the pair or set to its value before the loss; or

b.  pay the difference between actual cash value of the property before and after the loss.

5.  **Loss Clause.**  The amount of insurance under this policy will not be reduced except for a total loss of a scheduled item. We will refund the unearned premium applicable to such item after the loss or you may apply

3

it to the premium due for the replacement of the scheduled item.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.

The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of your residence to select an umpire. The appraisers will then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.

If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by you and us.

7. **Your Duties After Loss.** In case a covered loss occurs, you must:

   a. protect the property from further loss and take all steps possible to minimize the loss. Expenses incurred will be borne by you and us proportionate to our respective interests;

   b. report as soon as practicable in writing to us or our agent any loss or damage which may become a claim under this policy (In case of theft, the police are also to be notified); and

   c. file with us or our agent, within 90 days after discovery of the loss, a signed sworn proof of loss. This will state the facts and amount of the loss to the best of your knowledge.

8. **Examination Under Oath.** You agree:

   a. to be examined under oath and subscribe to the same as often as we reasonably require;

   b. that employees, members of your household or others will be produced for examination under oath to the extent that it is within your power to do so;

   c. to produce, if requested, the remains of the covered property; and

   d. to produce such records as we may need to verify the claim and its amount, and to permit copies of such records to be made if needed.

9. **Suit Against Us.** No action will be brought unless:

   a. there has been compliance with the policy provisions; and

   b. the loss has become payable as specified in the **CONDITION** entitled "**Loss Payment**".

   Any action must be started within one year after the occurrence causing loss or damage.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your Proof of Loss and:

    a. we reach agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Subrogation.** In the event of loss which we believe may be collectible from others, we may pay in the form of a loan to be repaid out of any recoveries from others. You will cooperate in every way possible to assist in such recovery from others. We will, at our expense, take over your rights against others to the extent of our payment.

12. **No Benefit to Bailee.** No person or organization having custody of the property and to be paid for services will benefit from this insurance.

13. **Other Insurance.** If at the time of loss or damage there is other insurance available which would apply to the property in the absence of this policy, the insurance under this policy will apply only as excess insurance over the other insurance.

14. **Cancellation.**

    a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect.

    b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice:

4

(1)  When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.  This condition applies whether the premium is payable to us or to our agent or under any finance or credit plan.

(2)  When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason.  We may cancel by notifying you at least 10 days before the date cancellation takes effect.

(3)  When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a)  if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

(b)  if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4)  When this policy is written for a period longer than one year, we may cancel for any reason at anniversary.  We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c.  When this policy is cancelled by us, the premium for the period from the date of cancellation to the expiration date will be refunded.  When you request cancellation, the return premium will be based on our rules for such cancellation.

d.  Sometimes the return premium is not refunded with the notice of cancellation or when this policy is returned to us.  In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

15.  **Non-Renewal**.  We may elect not to renew this policy.  We may do so by delivery to you, or mailing to you at your mailing address shown in the Declarations, written notice.  The notice will be mailed or delivered at least 30 days before the expiration date of this policy.  Proof of mailing will be sufficient proof of notice.

16.  **Waiver or Change of Policy Provisions**.  A waiver or change of any policy provision must be in writing by us to be valid.  Our request for an appraisal or examination will not waive any of our rights.

17.  **Liberalization Clause**.  If we adopt a revision which would broaden coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

18.  **Newly Acquired Property**.

a.  With respect to jewelry, furs, cameras and musical instruments, we cover newly acquired property of a class already covered.  Coverage will not exceed 25% of the amount of insurance for that class of property or $10,000, whichever is less.  You must:

(1)  report this newly acquired property to us within 30 days of acquisition; and

(2)  pay the additional premium from the date acquired.

b.  With respect to fine arts, we cover newly acquired property of this class if already covered.  Coverage will not exceed 25% of the amount of insurance for this class.  You must:

(1)  report this newly acquired property to us within 30 days of acquisition; and

(2)  pay the additional premium from the date acquired.

19.  **Intentional Acts**.  If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits then this policy is void and we will not pay you or any other insured for this loss.

## SPECIAL CONDITIONS

1.  **Fine Arts**.  You agree that the covered property will be packed and unpacked by competent packers.

We agree that the amount shown for each scheduled item is the value of the item.

In case of the total loss of any item or items which are part of a set:

a.  we agree to pay you the full value of the set as shown on the schedule; and

b.  you agree to surrender the remaining items of the set to us.

2  **Golfer's Equipment**.  Golfer's equipment includes golf clubs, golf clothing and golf equipment (not watches,

5

jewelry and stock for sale) which are your property. Your other clothing is covered while in a locker located in a building used in connection with the game of golf.

Golf balls are covered only if loss is caused by fire or burglary. Burglary coverage applies only if the golf balls are taken from within a building, room or locker by a person making unlawful entry by force. There must be visible marks of forced entry upon the premises.

3. **Musical Instruments.** You agree that no instrument played for pay during the policy term will be covered. This condition applies unless changed by endorsement and additional premium is paid at our current rates.

4. **Silverware.** Pens, pencils, flasks, smoking implements or accessories or items of personal adornment are not covered as "Silverware".

5. **Sports Equipment.** In case of loss we will pay no greater proportion of the loss than the amount of insurance bears to the actual value of the property at the time of loss.

6. **Stamp and Coin Collections.**

   a. We cover:

      (1) postage stamps and other philatelic property owned by or in custody or control of the Insured. This includes the books, pages and/or mountings used; and

      (2) rare and current coins, medals, paper money, bank notes, tokens of money and other numismatic property owned by or in custody or control of the Insured. This includes coin albums, containers, frames, cards and display cabinets in use with such collection.

   b. In case of loss the amount payable will be determined as follows:

      (1) If loss is to a scheduled item we will pay no more than the amount shown.

      (2) If loss is to scheduled property described as pairs, strips, blocks, series, sheets, covers, frames, cards or the like, we will pay in the event of total loss no more than the amount shown. In the event of a partial loss we will pay no more than the cash market value of the whole set less the cash market value of the remainder at the time of loss. It is agreed that if the property is covered for less than the cash market value payment will be limited to the proportion that the amount of insurance bears to the cash market value.

      (3) In all other cases of loss to covered property, we will pay no more than the actual cash market value of the property at the time of loss. Payment will not exceed $250 for:

         (a) one stamp, coin or other individual article; or

         (b) one pair, strip, block, series, sheet, cover, frame, card or the like.

      (4) We will not pay a greater proportion of a loss on unscheduled property than the amount of insurance on that unscheduled property bears to the cash market value at the time of loss.

7. **Cameras.** You agree that no camera used for pay during the policy term will be covered. This condition applies unless changed by endorsement and additional premium is paid at our current rates.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as shown in the Declarations or Extension Certificate.

**Option I - Inflation Coverage.**

1. This option will apply only to those classes of property which indicate in the schedule that "Inflation Coverage Applies".

2. The amount of insurance applicable to those classes of property will be increased at the same rate as the increase in the inflation coverage index shown in the Declarations.

   a. To find the limits on a given date:

      (1) divide the index on that date by the index as of the effective date of the inflation coverage provision; then

      (2) multiply the resulting factor by the amount of insurance applicable to the property covered.

The limits of liability will not be reduced to less than the amounts shown in the schedule.

   b. If during the term of this policy, you:

      (1) change the amount of insurance on any property to which Inflation Coverage applies; or

(2) add property to which Inflation Coverage applies;

the effective date of this Inflation Coverage on that property is changed to coincide with the effective date of the change or addition.

**Option Q - Broad Pair and Set Coverage.** In the event of the total loss of an item or items which are part of a pair or set, we agree to pay you the full amount of the value of such pair or set as specified in the schedule (IN ACCORDANCE WITH THE LOSS SETTLEMENT CONDITION). You agree to surrender the remaining item or items of the pair or set to us.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Lynne M. Yauell*          Secretary                                               President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment is proper.

7